IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| FATEEN MAOLUD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 306-091 |
| | ) |
| JIMMY SIKES, et al., | ) |
| | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Fateen Maolud, an inmate currently incarcerated at the Floyd County Correctional Institution located in Rome, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983 in the Northern District of Georgia. Plaintiff is *pro se* and paid the applicable filing fee in full. As the Defendants reside, and the alleged events forming the basis of the above-captioned case occurred, in the Southern District of Georgia, the Honorable Julie E. Carnes, United States District Judge, transferred the above-captioned case to the Southern District of Georgia. (Doc. no. 6, pp. 5-11). The matter is now before the Court on Defendants' motion for summary judgment. (Doc. no. 39). Plaintiff opposes the motion. (Doc. no. 57). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Defendants.

# I. STATEMENT OF FACTS

A.  **Plaintiff's Version**

Plaintiff avers that, in May 2004, he was examined by unnamed Montgomery State Prison ("MSP") medical personnel, who informed him that his teeth required two (2) fillings. (Maolud v. Sikes, Civ. Case No. 106-1043 (N.D. Ga. May 5, 2006), *hereinafter* "CV106-1043," doc. no. 1, p. 4; doc. no. 57, p. 2). Plaintiff contends that, during the following year, he submitted several sick call requests concerning his dental condition, but that he never received a response. Id. Plaintiff maintains that, on May 10, 2005, he submitted an informal grievance to Defendant Gramiak requesting that the MSP medical staff be informed of his constitutional right to receive adequate healthcare. (CV106-1043, doc. no. 1, p. 4; doc. no. 57, p. 7). Plaintiff submits that, during a meeting on May 20, 2005, he informed Defendant Gramiak that his teeth were causing hot and cold flashes in his mouth, and Defendant Gramiak notified him that the MSP medical staff had been advised of his constitutional rights. (CV106-1043, doc. no. 1, p. 4).

Plaintiff further avers that, on May 27, 2005, Defendant Gramiak responded to his informal grievance.[1] (Id. at 10). Plaintiff contends that, although Defendant Gramiak advised the MSP medical staff of his constitutional rights, Defendant Gramiak failed to ensure that he receive dental treatment. (Id.). Plaintiff maintains that Defendant Gramiak merely forwarded his complaints to the MSP medical staff and mocked him. (CV106-1043, doc. no. 1, p. 10; doc. no. 57, p. 3).

---

[1]The Court notes that the response to Plaintiff's informal grievance appears to be signed by Plaintiff's counselor rather than Defendant Gramiak. (See doc. no. 57, p. 12).

2

Plaintiff avers that, on May 27, 2005, he submitted a formal grievance to Defendant Sikes concerning his condition and requesting dental treatment. (CV106-1043, doc. no. 1, p. 18; doc. no. 57, p. 8). Plaintiff contends that, on June 15, 2005, he was examined by unnamed MSP medical personnel, who stated, "We have no individual full[-]time to fill teeth. The only thing we do here is pull teeth[,] so put in a request form." (CV106-1043, doc. no. 1, p. 17). Plaintiff maintains that, on June 20, 2005, Defendant Sikes responded to his formal grievance and denied his request because he failed to submit a sick call request, he was examined on June 15, 2005 and placed on the "filling list," and his informal grievance did not allege a serious injury. (CV106-1043, doc. no. 1, p. 18; doc. no. 57, p. 8). Plaintiff submits that Defendant Sikes also advised him to, in accordance with MSP policy, submit a sick call request if he continued to have dental concerns. (CV106-1043, doc. no. 1, p. 18; doc. no. 57, p. 8).

Plaintiff argues that, because Defendants failed to staff a permanent dentist at MSP, he was not provided with adequate dental treatment. (CV106-1043, doc. no. 1, pp. 18-19; doc. no. 57, pp. 3-4). Plaintiff contends that Defendants "routinely failed to monitor subordinates, check-up on them, and review charts," as well as allowed their subordinates "to ignore and/or fall outside of the prevailing professional standard of care . . . ." (Doc. no. 57, p. 4). Plaintiff concludes that, as a result of Defendants' alleged deliberate indifference, his dental condition deteriorated, he experienced constant hot and cold "flashes" in his mouth, he suffered severe pain and ongoing headaches, his gums became swollen and his teeth became irritated, and one tooth "completely rotted out and dissolved." (See CV106-1043, doc. no. 1, pp. 6 & 11; doc. no. 57, pp. 3-4).

3

Plaintiff provides the Court with copies of his May 10 and 27, 2005 grievances and their respective responses. (CV106-1043, doc. no. 1, pp. 28 & 29; doc. no. 57, pp. 7 & 8). Plaintiff also submits the Georgia Department of Corrections ("GDC") response to his grievance appeal, which indicates, *inter alia*, that the GDC Health Services Clinical Team determined that Plaintiff received adequate and appropriate treatment. (CV106-1043, doc. no. 1, p. 27; doc. no. 57, p. 9). Plaintiff also provides excerpts from his GDC medical records, dating back to 1996, which demonstrate that he has received various dental examinations while incarcerated. (CV106-1043, doc. no. 1, pp. 24-26; doc. no. 57, pp. 10-12). Although examination of Plaintiff's GDC medical records reveals that Plaintiff received a dental examination on May 4, 2004, the records do not clearly indicate the diagnosis or prescribed course of treatment. (CV106-1043, doc. no. 1, p. 24; doc. no. 57, p. 10). Notably, Plaintiff has failed to provide the Court with any verifying medical evidence in support of his conclusory allegations that, as a result of Defendants' alleged failure to provide him with timely, adequate dental treatment, he experienced discomfort and pain, he suffered from headaches, and his dental condition deteriorated.

**B.     Defendants' Version**

At all times relevant to this case, Defendants Sikes and Gramiak were employed at MSP as the Warden and Deputy Warden, respectively. (Doc. no. 39, Ex. A, Sikes Aff., ¶ 3, Ex. B, Gramiak Aff., ¶ 3). Defendant Gramiak submits that his duties include ensuring that all care and treatment services are available to inmates; maintaining facility records; and ensuring that applicable policies, procedures, and time-frames are enforced. (Id., Ex. B, ¶ 4). Defendant Sikes submits that his duties include supervising the MSP staff; directing care and treatment functions, personnel and administrative service functions, security functions, and

administration of MSP; overseeing the Disciplinary Committee; and maintaining working relationships with correctional and public officials. (Id., Ex. A, ¶ 4). Defendant Sikes maintains that he does not participate in the medical or dental care of inmates, and that he is not authorized to treat, prescribe, or dispense medications to inmates. (Id. ¶ 5).

Defendant Gramiak avers that the GDC provides dental services to MSP inmates under contract with Mental Health Management ("MHM"). (Doc. no. 39, Ex. B, ¶ 5). According to Defendant Gramiak, MSP inmates can be examined by a MHM dentist by submitting sick call requests and then being referred to a dentist for treatment.[2] (Id. ¶ 6). Defendant Gramiak contends that MHM, and the MSP medical staff, decide whether inmates have urgent dental conditions. (Id. ¶ 7). Defendant Sikes submits that, if the MSP medical staff is unavailable to render treatment, inmates needing medical care are sent to another appropriate institution designated by the Commissioner of the GDC. (Id., Ex. A, ¶ 6).

Defendants aver that, on April 11, 2005, Nurse Pryor received a "Health Services Request" form, wherein Plaintiff requested fillings for his teeth. (Id., Ex. C, Pryor Aff., ¶ 3). Defendants contend, and Plaintiff's MSP medical records confirm (id., Ex. C-1), that Nurse Pryor referred Plaintiff's request to the dental staff for review on April 13, 2005. (Id., Ex. C,

---

[2]Defendants have submitted the GDC Local Operating Procedure ("LOP"), which provides that MSP inmates shall have the opportunity to have their healthcare requests evaluated by healthcare professionals in a timely manner. (Doc. no. 39, Ex. C-2, p. 1). Notably, the GDC LOP provides, "Sick call complaints relating to dental problems will be evaluated for emergency and non-emergency problems. Emergency problems will be coordinated with the dentist or MD at Georgia State Prison ("GSP"). Non-emergency problems will be handled by the dentist, per dental protocol, on next available appointment." (Id. at 2). Furthermore, the GDC LOP states, "Requests for dental sick call will be reviewed during medical sick call and referred to dental sick call for treatment as indicated." (Id.). Moreover, the GDC LOP mandates, "The sick call facilitator assesses the inmate's problem/major complaint and makes the appropriate referral when necessary." (Id. at 3).

5

¶ 6). Defendants maintain that, because Dr. Kevin Frank, who was the dentist assigned to MSP, was out on medical disability, Plaintiff was unable to receive dental treatment on April 18, 2005, but that Plaintiff was referred to Dr. Brian Burke, who was the dentist assigned to GSP.[3] (See id., Ex. A, ¶ 8, Ex. C, ¶ 7).

Defendant Gramiak avers that, on May 10, 2005, Plaintiff filed an informal grievance alleging that he needed two (2) fillings, that he had not received treatment, and that he had a cold chill in his gums. (Id., Ex. B, ¶ 9). Defendant Gramiak contends that, after receiving Plaintiff's grievance, he informed the medical staff that all inmates, including Plaintiff, have a constitutional right to adequate healthcare. (Id. ¶ 12). Defendant Gramiak also submits that, on May 20, 2005, he advised Plaintiff that he had communicated Plaintiff's concerns to the appropriate staff. (Id.). Defendant Gramiak maintains that this was the extent of his contact with Plaintiff. (Id. ¶ 8).

Defendants aver that, on June 15, 2005, Plaintiff was examined by Dr. Burke, who determined that Plaintiff had small cavities, which should not be causing pain and were not "emergent/urgent," and placed him on the restorative waiting list.[4] (Id., Ex. C, ¶ 9). Defendant Sikes contends that Dr. Burke placed Plaintiff on the list for routine services because Plaintiff did not require urgent care. (Id., Ex. A, ¶ 8). Defendants maintain that,

---

[3] According to Nurse Pryor, pursuant to MSP operating procedure, urgent dental requests concerning pain, discomfort, or swelling are assessed on sick call, treated pursuant to dentist or physician phone orders, and referred to the next dental visit. (Doc. no. 39, Ex. C, ¶ 8). Nurse Pryor submits that non-urgent dental requests for fillings or cleanings are referred to the dental staff for triage or appointments. (Id.).

[4] Defendants provide the Court with the sworn statement of Ms. Elizabeth Turner, MSP Dental Assistant, who states that, on April 11, 2005, Plaintiff was placed on the "dental filling list" after requesting treatment. (Doc. no. 39, Ex. C-3, p. 2). Furthermore, Ms. Turner submits that, on June 15, 2005, Plaintiff was examined by Dr. Burke, who informed Plaintiff that his condition was not urgent and that he was on the "filling list." (Id.).

6

following his June 15, 2005 examination, Plaintiff had only two (2) other sick call visits, concerning testicle pain. (Id., Ex. A, ¶ 9, Ex. C, ¶ 10). Finally, Defendant Sikes submits that, while incarcerated at MSP, Plaintiff received appropriate treatment and that his condition was never "urgent." (Id., Ex. A, ¶ 10).

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[5] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that

---

[5]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

7

demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Id. at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

**B.     Defendants Did Not Act with Deliberate Indifference**

Bearing the above standard in mind, Defendants are entitled to summary judgment. To survive Defendants' motion for summary judgment, Plaintiff must produce evidence from which a reasonable jury could conclude that: (1) Plaintiff had an objectively serious medical need, (2) Defendants acted with deliberate indifference to that need, and (3) Plaintiff's injury was caused by the Defendants' wrongful conduct. Goebert v. Lee County, 510 F.3d 1312,

8

1326 (11th Cir. 2007) (citations omitted). Although the record indicates that Plaintiff suffered from a dental condition (see doc. no. 39, Ex. C-3), the Court need not determine, when addressing the merits of the instant motion, whether Plaintiff had an objectively serious medical need because he has not shown that Defendants acted with deliberate indifference to his need.

To show that Defendants were deliberately indifferent to his need, Plaintiff must prove three things: (1) Defendants were subjectively aware of a serious risk to Plaintiff's health, (2) Defendants disregarded that risk, and (3) Defendants followed a course of action that was "more than gross negligence."[6] Id. at 1326-27 (citing Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005) (*per curiam*)). In addition, the prisoner plaintiff seeking to show that a delay in medical treatment amounted to deliberate indifference "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), *abrogated in part on other grounds by* Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002); see also Farrow v. West, 320 F.3d 1235, 1244 n.12 (11th Cir. 2003) ("In Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002), the Supreme Court criticized part of the qualified immunity analysis in Hill, but not Hill's analysis of what constitutes a serious medical need of prisoners.").

---

[6] When determining whether a course of action constitutes "more than gross negligence" in cases concerning increased injury due to the delay in providing medical care, the Eleventh Circuit has set out some factors to guide the analysis, including: (1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay. Goebert, 510 F.3d at 1327 (citing Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1189 (11th Cir.1994), *abrogated in part on other grounds by* Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002)).

9

However, it should be recognized that the mere fact that a prisoner "may have desired [a] different mode[] of treatment" does not give rise to a claim for deliberate indifference. Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985). "Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments." Id. (citation omitted). Put another way, a mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment will not support a claim of cruel and unusual punishment. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989).

Furthermore, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Farrow, 320 F.3d at 1243 (internal quotation and citation omitted). The Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris, 941 F.2d at 1510 (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). As the Supreme Court has explained:

> [A]n inadvertent failure to provide medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).

The Eleventh Circuit has addressed the level of dental care owed to prisoners. In Farrow, the plaintiff argued that the prison dental staff violated his Eighth Amendment rights by delaying, for approximately 18 months, the provision of dentures. Farrow, 320 F.3d at 1239-41. Specifically, the plaintiff alleged that, because the lack of teeth made it painful to eat hard foods, he lost twenty (20) pounds and that he experienced bleeding when his teeth sliced into his gums. Id. at 1239. Addressing the plaintiff's claim, the Eleventh Circuit recognized that delayed treatment may give rise to a constitutional claim. Id. at 1247. Ultimately, the Eleventh Circuit concluded that the plaintiff's claim should survive summary judgment "given [the plaintiff's] recognized need for denture treatment, the nature of his continuing problems, the sheer length of the delay involved, and the lack of any reasonable explanation for the inordinate delay." Id.

Plaintiff argues that, because Defendants failed to staff a dentist at MSP, he was not provided with timely, adequate dental treatment. (CV106-1043, doc. no. 1, pp. 18-19; doc. no. 57, pp. 3-4). Plaintiff submits that, as a result of Defendants' alleged deliberate indifference, he suffered hot and cold flashes in his mouth, severe pain, and ongoing headaches, that his gums became swollen and his teeth became irritated, that his dental condition deteriorated, and that one tooth "completely rotted out and dissolved." (See CV106-1043, doc. no. 1, pp. 6 & 11; doc. no. 57, pp. 3-4). Defendants counter, "Plaintiff is unable to establish that Defendant[s] failed to treat his dental needs or was deliberately indifferent to any alleged serious medical/dental need from which Plaintiff may have suffered." (Doc. no. 39, Defs.' Br., p. 7). Defendants submit that Plaintiff merely claims that he does not agree with the dental care he was provided and that disagreements concerning proper medical treatment between a physician and a prisoner do not constitute deliberate

11

indifference. (Id. at 8-9). Defendants conclude that Plaintiff cannot establish any disregard for his dental needs, that he was provided with care, that his dental condition was not urgent, and that he simply did not want to wait his turn for his fillings. (Id. at 10-11).

First, it should be noted that, although the record indicates that Plaintiff received a dental examination on May 4, 2004, neither Plaintiff's diagnosis nor the prescribed course of treatment are clearly discernible. (CV106-1043, doc. no. 1, p. 24; doc. no. 57, p. 10). Furthermore, Plaintiff has provided the Court with no verifying medical evidence in support of his conclusory allegations that, as a result of Defendants' alleged failure to provide him with timely, adequate dental treatment, he experienced discomfort and pain, he suffered from headaches, or his dental condition deteriorated. Rather, the record demonstrates that Defendants responded to Plaintiff's complaints and that Plaintiff received dental treatment--at no time did Defendants subjectively know about a risk of serious harm to Plaintiff or disregard that risk. As previously noted, Plaintiff filed, on May 10, 2005, an informal grievance concerning his alleged dental condition and requesting that the MSP medical staff be advised of his constitutional rights. (CV106-1043, doc. no. 1, p. 28; doc. no. 57, p. 7). The parties agree that, sometime prior to the May 20, 2005 meeting between Defendant Gramiak and Plaintiff, Defendant Gramiak followed-up with the MSP medical staff concerning Plaintiff's treatment and advised them of Plaintiff's constitutional right to receive adequate treatment. (CV106-1043, doc. no. 1, p. 4; doc. no. 39, Ex. B, ¶ 12). Plaintiff then filed, on May 27, 2005, a formal grievance concerning his dental condition and treatment. (CV106-1043, doc. no. 1, p. 29; doc. no. 57, p. 8). On June 20, 2005, Defendant Sikes responded to Plaintiff's formal grievance, indicating that there was no evidence that Plaintiff requested, or was denied, dental treatment. (Id.). Defendant Sikes noted that a dentist had

recently determined his condition was not urgent and placed him on the "filling list." (Id.). Defendant Sikes also advised Plaintiff to, in accordance with MSP policy, submit a sick call request if he continued to have dental concerns. (Id.). Indeed, the record lacks evidence suggesting that Defendants participated in Plaintiff's dental treatment or that they ignored Plaintiff's complaints. Simply put, the record does not support the conclusion that Defendants subjectively knew of a risk of serious harm to Plaintiff and disregarded that risk.

Turning to the "gross negligence" prong of the Goebert deliberate indifference analysis, nothing in the record suggests that Plaintiff received improper dental treatment, let alone that Defendants followed a course of action that was "more than gross negligence." Examining the evidence in the record and the factors set forth in Goebert, 510 F.3d 1327, the Court concludes that, although the parties dispute the seriousness of Plaintiff's medical need,[7] nothing in the record indicates that Plaintiff's condition worsened due to the decision to place Plaintiff on the restorative waiting list. Unlike Goebert,[8] after Plaintiff complained

---

[7]Defendant Sikes submits, inter alia, "[A]t no time was [Plaintiff's] condition 'urgent' as defined by the [GDC]." (Doc. no. 39, Ex. A, ¶ 10). Furthermore, Nurse Pryor contends, "The findings were that [Plaintiff] had small cavities which should not be causing pain and were not emergent/urgent." (Id., Ex. C, ¶ 9). Plaintiff maintains that he experienced constant hot and cold "flashes" in his mouth, he suffered severe pain and ongoing headaches, his gums became swollen and his teeth became irritated, and one tooth "completely rotted out and dissolved." (See CV106-1043, doc. no. 1, pp. 6 & 11; doc. no. 57, pp. 3-4). The Court need not resolve this issue when addressing the merits of the instant motion because the record does not indicate that Plaintiff's dental condition significantly worsened as a result of Defendants' actions or omissions.

[8]In that case, the plaintiff argued, inter alia, that a defendant showed deliberate indifference to her serious medical need by failing to respond to her "complaint" concerning leaking amniotic fluid for more than a week. Goebert, 510 F.3d at 1327. Addressing the plaintiff's claims, the Eleventh Circuit held, inter alia, that the information in the plaintiff's "complaint" gave the defendant abundant reason to believe that her medical need was serious and that the defendant had a duty to "look into the matter." Id. at 1327-28. Furthermore, the Eleventh Circuit determined that the evidence supported the conclusion that the delay in treatment caused the plaintiff to lose her child. Id. at 1329. Conversely, as previously

13

about his dental condition, Plaintiff was examined by a Dr. Burke, who determined that Plaintiff suffered from small cavities that should not be causing pain, that his condition was not urgent, and that he could wait to receive fillings. (See doc. no. 39, Ex. C-3). Finally, although the record suggests Plaintiff's dental treatment was delayed due to staffing issues at MSP (see id., Ex. A, ¶ 8, Ex. C, ¶ 7), Plaintiff was referred, in accordance with GDC LOP, to Dr. Burke shortly after submitting a sick call request in April 2005, and more importantly, nothing in the record suggests that Plaintiff's condition worsened as a result of delayed dental treatment. In a nutshell, the record does not support the conclusion that the dental treatment afforded to Plaintiff was improper, let alone that Defendants followed a course of action that was "more than gross negligence."

In sum, Plaintiff has provided the Court with no verifying medical evidence in support of his contention that, as a result of Defendants' alleged failure to provide him with timely, adequate dental treatment, he experienced discomfort and pain, he suffered from headaches, and his dental condition deteriorated. Moreover, nothing in the record suggests that Defendants subjectively knew about a risk of serious harm to Plaintiff, disregarded that risk, or followed a course of action that was "more than gross negligence." Unlike Farrow, although Plaintiff's dental treatment was apparently delayed due to staffing issues at MSP, the record indicates that Plaintiff was referred to Dr. Burke, who determined that Plaintiff had small cavities, which should not be causing him pain, that Plaintiff's condition was non-

---

discussed, shortly after Plaintiff submitted grievances concerning his dental condition and treatment, Defendants looked into the matter. In this regard, Defendant Gramiak conveyed Plaintiff's concerns to the MSP medical staff, and Defendant Sikes, *inter alia*, noted that Plaintiff's recent examination revealed that his condition was non-urgent and advised him to submit a sick call request if his dental condition continued.

14

urgent, and that he could remain on the restorative waiting list. Simply put, Plaintiff has merely described dissatisfaction with the dental treatment received at MSP. However, even assuming that Plaintiff's dental treatment was somehow deficient or differed from the treatment plans other caregivers would have pursued, or that Plaintiff would have preferred, these assertions alone are insufficient to generate a dispute of material fact regarding Plaintiff's claim of deliberate indifference because differences in opinion concerning treatment fall well short of establishing deliberate indifference. See Harris, 941 F.2d at 1505; Waldrop, 871 F.2d at 1033. Therefore, viewing the evidence in the light most favorable to Plaintiff, the Court finds that there is no genuine issue as to any material fact and that Defendants were not deliberately indifferent to Plaintiff's medical needs. Accordingly, Defendants are entitled to judgment as a matter of law.

C.   **No Liability Based on *Respondeat Superior***

Defendants also argue that Plaintiff cannot show that his alleged injuries were the result of actions taken by Defendants, that Plaintiff is suing them based solely on their supervisory positions, and that supervisory officials are not liable in § 1983 actions based upon *respondeat superior* or vicarious liability. (Doc. no. 39, Defs.' Br., pp. 11-15). "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Depot of Soc. Serve., 436 U.S. 658, 691 & 694 n.58 (1978). To hold a supervisory official liable, Plaintiff must demonstrate that either (1) the supervisor actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. Hartley, 193 F.3d at

15

1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Plaintiff does not allege, and the record does not suggest, that Defendants participated in his dental treatment.[9]

Similarly, the record does not support the conclusion that there was a "causal connection" between Defendants and alleged constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[10] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

In this case, Plaintiff has not established the necessary causal connection, with respect to Defendants, to hold them liable for the alleged constitutional violations of other individuals. The evidence in the record does not support the conclusion that Defendants

---

[9]On this point, the Court notes that "[s]upervisory officials must rely on their subordinate professionals to make competent medical decisions. As long as supervisory officials have no reason to believe that their subordinates are failing to carry out their duties in a competent manner, they should not be held liable for medical decisions over which they have no direct control." Waldrop v. Evans, 681 F. Supp. 840, 851 (M.D. Ga. 1988).

[10]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

were responsible for a custom or policy adversely affecting Plaintiff's dental treatment. Although Plaintiff argues that he received delayed and inadequate dental treatment because MSP lacked an onsite permanent dentist (CV106-1043, doc. no. 1, pp. 18-19; doc. no. 57, pp. 3-4), GDC LOP provides that healthcare professionals timely evaluate MSP inmate requests, and notably, that emergency complaints related to dental problems be coordinated with the dentist or physician at GSP. (Doc. no. 39, Ex. C-2, pp. 1-2). In this regard, the record establishes that, pursuant to GDC LOP, Plaintiff's dental request was referred to Dr. Burke, who evaluated and addressed Plaintiff's dental care needs. (Doc. no. 39, Exs. C-1 & C-3).

Furthermore, the evidence in the record does not support the conclusions that Defendants failed to monitor their subordinates or allowed them to ignore and fall outside the prevailing professional standard of care. In this regard, Plaintiff submits Defendant Sikes's response to his formal grievance. (CV106-1043, doc. no. 1, p. 18; doc. no. 57, p. 8). However, Defendant Sikes's response indicates that, after investigating Plaintiff's grievance, Defendant Sikes ascertained that Plaintiff was recently examined by a dentist, who determined that his condition was not urgent. (Id. at 8). Indeed, the parties agree that, shortly after Plaintiff filed an informal grievance, Defendant Gramiak followed-up with the MSP medical staff and advised them of Plaintiff's constitutional right to receive adequate medical care. (CV106-1043, doc. no. 1, p. 4; doc. no. 39, Ex. B, ¶ 12). Simply put, the evidence in the record does not support the conclusion that Defendants knew about any widespread abuses related to the dental treatment of inmates.[11]

---

[11]On this point, receipt of a grievance alone does not satisfy the burden of putting a supervisor on notice of a widespread problem. Cf. Crowder v. Lash, 687 F.2d 996, 1005-06

In sum, nothing in the record indicates that Defendants participated in Plaintiff's dental treatment. Furthermore, viewing the evidence in the light most favorable to Plaintiff, the Court finds that there is no genuine issue as to any material fact, that the evidence in the record does not suggests a "causal connection" between Defendants and the alleged constitutional violation, and that Defendants are not liable for the alleged constitutional violations of other individuals based on their supervisory positions. Accordingly, Defendants are entitled to judgment as a matter of law.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment (doc. no. 39) be **GRANTED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Defendants.[12]

SO REPORTED and RECOMMENDED this ___ day of June, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

(7th Cir. 1982) (rejecting claim that the Commissioner of the Department of Corrections could be held liable for damages from any constitutional violations at a facility within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions).

[12]Defendants also argue that they are entitled to qualified immunity. (Doc. no. 39, Defs.' Br., pp. 15-18). However, the Court's conclusion that Defendants were not deliberately indifferent to Plaintiff's serious medical needs and that Defendants are not liable, based on their supervisory positions, for the alleged constitutional violations of other individuals pretermits consideration of Defendants' remaining argument. Scott v. Harris, ___ U.S. ___, 127 S. Ct. 1769, 1774 (2007); see also Cuvillier v. Rockdale County, 390 F.3d 1336, 1338 n.4 (11th Cir. 2004) (explaining that the availability of the qualified immunity defense is "immaterial" when no underlying constitutional violation exists).